UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

ROBIN SHEMENDERA,

                      Plaintiff,

v.                                  **DECISION AND ORDER**
                                               12-CV-178S

FIRST NIAGARA BANK,

                      Defendant.
───────────────────────────────

## I. INTRODUCTION

Robin Shemendera alleges that her former employer, First Niagara Bank, discriminated against her on the basis of her age in violation of the Age Discmination in Employment Act ("ADEA") and New York State's Human Rights Law.

Currently before this Court is First Niagara's motion for summary judgment. For the following reasons, that motion is granted.

## II. BACKGROUND[1]

Robin Shemendera, over 40 years of age at all relevant times, was a manager in the Items Processing Department at First Niagara from December 2005 to February 2012. (Def.'s Stmnt, ¶¶ 2; Docket No. 19-40.) According to the parties, this department "encompasses a number of 'back-office' banking functions, including returns, research and adjustments, check processing, and statement rendering." (Id., ¶ 10.) During her employment, First Niagara completed several acquisitions, resulting in increased workload for Shemendera and her peers. (Id., ¶ 13.) At one point, her supervisor, Beth Neidrauer, required her to process roughly three times the amount of statements compared to when

---

[1] This Court has accepted facts in Defendant's statement of undisputed facts (referred to as "Def.'s. Stmnt.") to the extent that they have not been controverted by the opposing party. See Local Rule 56(a)(2) (statements not specifically controverted are deemed admitted).

she was first hired, and Neidrauer told her she had "do whatever was needed" to get the job done. (Compl., ¶ 18.) Shemendera contends that younger employees – Carrie Faulise and Tamara Canion – received assistance in meeting these demands, but that she did not. In 2010, Shemendera was also denied an annual bonus – referred to at First Niagara as a "pinnacle bonus." She also alleges that First Niagara perpetrated various other slights, including failing to provide her with new equipment, denying her request for a cell phone, and maintaining a cold temperature in her work area. She further alleges that Neidrauer made inappropriate comments. On October 3, 2011, during an annual review, Shemendera contends that Neidrauer told her, "this is all your fault, come over here so I can put my hands around your neck so I can strangle you." (Compl., ¶ 32.) Shemendera admits, however, that Neidrauer never made any comments about her age, or about anybody else's age. (Def.'s Stmnt. ¶ 54.) According to Shemendera, in February 2012, her employment was "terminated/severed." (Shemendera Decl., ¶ 27; Docket No. 29-2.)

Shemendera filed a formal charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 21, 2011. The EEOC issued "A Right to Sue Notice" on December 28, 2011, authorizing her to bring this suit in federal court. (Id., ¶ 9.)

### III. DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is appropriate, even in a discrimination case, "where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986)); Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). A "genuine" dispute exists "if the evidence is such that a

reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**B.     The ADEA**

Under the ADEA, it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait [age] actually motivated the employer's decision." Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L. Ed.2d 338 (1993). But mixed motivation is not enough: "[t]o establish a disparate-treatment claim under the plain language of the ADEA, . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 129 S.Ct. 2343, 2350, 174 L. Ed.

2d 119 (2009).

In determining whether a plaintiff has met this burden, courts in this circuit apply the three-step McDonnell Douglas burden shifting scheme. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); D'Cunha v. Genovese/Eckerd Corp., 479 F.3d 193, 195 (2d Cir. 2007).

Under this scheme, the plaintiff must first bring forth sufficient evidence of a *prima facie* case of discrimination. To do this, a plaintiff must show: (1) membership in the protected age group; (2) qualifications for the job at issue; (3) an adverse employment action; and (4) that the adverse action occurred under circumstances giving rise to an inference of discriminatory intent. Terry v. Ashcroft, 336 F.3d 128, 137–38 (2d Cir. 2003). This "creates a presumption that the employer unlawfully discriminated." James v. New York Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000).

Second, if the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant to articulate a non-discriminatory reason for the employee's rejection.

Third, if the defendant meets this burden of production, the presumption drops away, and the plaintiff must bring forth sufficient evidence that the defendant's explanations are pretextual. Fisher v. Vassar Coll., 114 F.3d 1332, 1337–38 (2d Cir.1997).

**C.    Statute of Limitations**

Employment discrimination claims under the ADEA are considered timely if the plaintiff: (1) timely filed an administrative charge, (2) received a right-to-sue letter, and (3) commenced suit within ninety days of receiving the right-to-sue letter. See 29 U.S.C. § 626(d). Because the alleged discrimination took place in New York, which is a state that has its own anti-discrimination laws and an agency to enforce those laws, the time period for filing claims with the EEOC is extended from 180 days to 300 days, measured from the date of the alleged discriminatory act. 29 U.S.C. §§ 626(d)(2), 633(b). Thus, in New York,

a plaintiff has 300 days after the alleged discriminatory act to file a charge with the EEOC. Harris v. City of N.Y., 186 F.3d 243, 248 n. 2 (2d Cir.1999).

**D.      Shemendera's ADEA Claims**

There is no dispute that the principal act that Shemendera complains of falls outside the 300-day limitation period. Shemendera's main contention is that, because of her age, she did not receive the pinnacle bonus on February 11, 2010. But Shemendera did not file her complaint with the EEOC until November 21, 2011. Because Shemendera was denied the pinnacle bonus on February 11, 2010 – roughly a year and a half before she filed the EEOC charge – it is time barred.

Although equitable tolling may be appropriate where a plaintiff can show that she "(1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply," Zerilli-Edelglass v. N.Y. City Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003) (internal quotation marks omitted), Shemendera makes no application in this regard. Instead, she contends that the time-barred claim can serve as relevant background.

This contention is accurate. See Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 176 (2d Cir. 2005). But, Shemendera must still come forward with a timely claim. See id. ("[E]vidence of an earlier alleged retaliatory act may constitute relevant background evidence *in support of that timely claim*") (emphasis added). In other words, she must still establish her *prima facie* case by providing some evidence of a discriminatory, adverse act within the statutory period.

No reasonable jury could conclude that she has. Indeed, Shemendera fails at the third and fourth steps of her *prima facie* case.

The third step of an ADEA *prima facie* case requires the plaintiff to demonstrate that she was subject to an adverse employment action, defined as an action that works a

materially adverse change in the terms and conditions of employment. Galabya v. New York City Bd. of Ed., 202 F.3d 636, 640 (2d Cir.2000). To be materially adverse, a change in working conditions must be more than merely inconvenient. Examples of "adverse employment actions" include firing, failing to promote, reassignment with significantly different responsibilities, a significant change in benefits, a demotion evidenced by a decrease in wage or salary, or a less distinguished title.[2] See, e.g., Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L. Ed. 2d 633 (1998); Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004).

Shemendera argues that First Niagara's alleged failure to provide her with assistance in meeting workload demands is an adverse action giving rising to inference of discmination.[3] But first, Shemendera admits that she is not asserting that First Niagara discriminated against her by increasing her workload. (Shemendera Dep., Tr. 114:2–13.) And second, courts have held that simply denying an employee assistance is not an adverse employment action. Indeed, the court in Morrison v. Porter found that "[d]enying plaintiff assistance with her workload (assuming *arguendo* that this happened – the record does not clearly support such an inference) does not rise to the level of an adverse employment action." 363 F. Supp. 2d 586, 591 (S.D.N.Y. 2005) (parentheses in original); see also Ndondji v. InterPark Inc., 768 F. Supp. 2d 263, 282 (D.D.C. 2011) (finding no adverse action where employee claimed "that he was deprived of a reasonable number of [supporting staff] compared to other employees and that he was over-worked").

---

[2]Shemendera does not contend that her termination in February of 2012 was a result of unlawful discrimination.

[3]In her complaint and EEOC charge Shemendera asserts that Fist Niagara engaged in various other slights (described above, at 1–2). But, in response to First Niagara's summary judgment motion, she abandons any claim connected with those allegedly discriminatory acts. (See Pl.'s Br. at 8–14 (relying solely on claims of denial of assistance of denial of the pinnacle bonus)).
Also, though certain aspects of her complaint suggest that she is asserting retaliation and hostile-work environment claims, she explicitly withdraws her retaliation claim and denies asserting a hostile-work environment claim. (Id., at 14-15.)

Shemendera offers no authority in response to the argument that a denial of assistance cannot constitute an adverse action.

But even if it could, her claim must fail. Here, as in <u>Morrison</u>, the record is not clear that she was denied assistance when younger employees were provided it. Shemendera does not know how many additional staff members were assigned to Carrie Faulice or Tamara Canion, nor can she identify the additional staff members. (Shemendera Dep., Tr. 48:15 – 49:11). And she admits that she was given at least one staff member to assist her during a period of heavy work. (<u>Id.</u> 46:3 – 47:6.) At other times, she cannot remember whether she was given additional staff. (<u>Id.</u>, 41:19–22; 51:5 – 52:11.) For her part, Neidrauer, avows that the number of staff assigned to assist Shemendera grew while she was employed at First Niagara. (Neidrauer Decl., ¶ 3.)

Shemendera also concedes that her peers' workloads likewise increased and that both older and younger employees had to work long hours at the bank. (144:1-5.) Aside from Shemendera's vague, ambiguous, and sometimes contradictory recollection that two younger employees may have received more assistance than her (again, she cannot say how much more staff were assigned to younger employees, who they were, who needed more staff, or whether, during heavy workload periods, she also received assistance) there is absolutely no evidence in the record supporting a claim that her workload was disproportionate in relation to her peers or that younger employees were treated more favorably.

Thus, even if the denial of assistance could be considered an adverse action, and even drawing all inferences in her favor, Shemendera has not supplied sufficient evidence, on which a jury could reasonably rely, demonstrating that such an action occurred and that, if it did, age was the "but for" cause. See <u>Anderson</u>, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must

be evidence on which the jury could reasonably find for the plaintiff."); D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir.1998) (nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful"); Howard v. Cronk, 526 F. Supp. 1227, 1230 (S.D.N.Y. 1981) ("A litigant may not rely upon vague conclusory allegations to withstand a motion for summary judgment.").

**E.    Shemendera's State Law Claims**

Although claims brought under New York's Human Rights law are analytically identical to claims brought under the ADEA, the statute of limitations for claims brought under the New York State Human Rights Law is different. Under that law, the limitations period is three years. N.Y. C.P.L.R. § 214(2); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996). Further, unlike the ADEA, there are no administrative prerequisites to filing a claim under New York's Human Rights law. See N.Y. Exec. Law 297(9); Manos v. Geissler, 377 F. Supp. 2d 422, 427 (S.D.N.Y. 2005); see also Crespo v. N.Y. City Transit Auth., No. 01 Civ. 0671, 2002 WL 398805, at *10 (E.D.N.Y. Jan. 7, 2002) (citing Branker v. Pfizer, Inc., 981 F. Supp. 862, 865 (S.D.N.Y.1997) ("[Plaintiff's] claim under the [New York State Human Rights Law] is not administratively barred, because that statute contains no requirement of exhaustion of administrative remedies.")).

Neither party has addressed claims that may fall within the three-year period but were not filed with the EEOC within the 300-day period for ADEA purposes. In any event, having disposed of all federal claims falling within this Court's original jurisdiction, this Court finds it appropriate to decline to exercise supplemental jurisdiction over any remaining state claims. See 28 U.S.C. § 1367(c)(3); Cable v. N.Y. State Thruway Auth., 4 F. Supp. 2d 120, 127 (N.D.N.Y. 1998) (internal citation, quotation marks,  and modification omitted) ("Allowing the state [Human Rights] law claims to continue in federal court would enable plaintiff to circumvent the statutory administrative exhaustion requirements."). Generally,

the United States Supreme Court has instructed that courts should decline to exercise supplemental jurisdiction in the absence of federal claims. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L. Ed.2 d 720 (1988) (noting that in the usual case where all federal claims are eliminated before trial, the relevant factors informing the decision of whether to exercise supplemental jurisdiction will "point towards declining to exercise jurisdiction over the remaining state-law claims"); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

The Second Circuit shares this view: where "federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003); see also Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial the state claims should be dismissed as well."). Thus, any state law claim is dismissed.

## IV. CONCLUSION

Based on the evidence before this Court, no reasonable jury could conclude that Shemendera was discriminated against under the ADEA, and this Court declines to exercise its supplemental jurisdiction over Shemendera's New York Human Rights Law claim. First Niagara's motion for summary judgment is granted.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 19) is GRANTED.

FURTHER, the Clerk of Court is directed to close this case.

SO ORDERED.

Dated: February 28, 2014
       Buffalo, New York

                                                /s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                                           Chief Judge
                                                    United States District Court